ENGEL, Circuit Judge.
 

 Comprehensive Accounting Corporation (Comprehensive) appeals from the order of the United States District Court for the Eastern District of Michigan affirming the order of the bankruptcy court that confirmed the Chapter 13 plan of debtors Timothy R. Pearson and Mary T. Pearson. Comprehensive contends that the Pearsons are not eligible for relief under Chapter 13 because the Pearsons owed, on the date of the filing of their petition, noncontingent, liquidated, unsecured debts in excess of the $100,000 limit of section 109(e), 11 U.S.C. § 109(e). We affirm.
 

 Comprehensive is in the business of supplying accountants with bookkeeping, accounting and tax service clients (accounts), marketing services, and data processing services. Timothy R. Pearson is an accountant who, with his wife Mary, entered into a series of agreements with Comprehensive in March of 1981 whereby Timothy R. Pearson, Inc. (Pearson, Inc.), a corporation created by the Pearsons, purchased a portion of Comprehensive’s accounting practice. To insure payment, Comprehensive took a security interest in the accounting practice so purchased. Comprehensive also required and obtained from Timothy and Mary their guarantee of Pearson, Inc.’s payments of the purchase price.
 

 Pearson, Inc. defaulted on the sales contract. On August 20, 1982, the Pearsons and Pearson, Inc. filed a complaint in Oakland County, Michigan Circuit Court seeking rescission of the agreements with Comprehensive and other relief on grounds of
 
 *752
 
 fraud and unconscionability. Meanwhile, Comprehensive initiated arbitration proceedings pursuant to the mandatory and binding arbitration clauses of the agreements. Subsequently, the civil suit, but not the arbitration proceedings, was dismissed. The arbitrator on December 20, 1982, rendered an award including attorneys’ fees in favor of Comprehensive and against the Pearsons and Pearson, Inc. jointly and severally for $127,450.12. The award also provided that the collateral— the accounts receivable, work papers, etc. —was to be transferred to Comprehensive upon failure of the Pearsons or Pearson, Inc. to satisfy the judgment within thirty days. On December 28, 1982, Comprehensive instituted a civil action in Cook County, Illinois Circuit Court to confirm the arbitration award.
 

 On March 16, 1983, Timothy Pearson notified the clients of Pearson, Inc. by letter that Pearson, Inc. would soon be filing a petition in bankruptcy and would no longer be able to serve them. The letter, however, stated that Timothy Pearson individually would be starting an accounting practice and would be pleased to serve them. On March 18, 1983, the Pearsons filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code, and on Mareh 28 filed their Chapter 13 statement. The Chapter 13 statement listed Comprehensive as having both a secured and an unsecured debt, but stated that the amount of each was unknown and in dispute.
 

 On May 5, 1983, Comprehensive filed its proof of claim stating that its claim was secured by the accounts “transferred” by Pearson, Inc. to Timothy Pearson. Comprehensive also sought relief from the automatic stay to foreclose on the security interest given by Pearson, Inc. in the collateral described in the agreements. The Pearsons disputed the amount of Comprehensive’s claim, the secured nature of the claim, and their possession of the collateral. In addition, the Pearsons on March 28, 1983, filed a complaint to avoid, as a preference, an agreement with Comprehensive which was recorded as a mortgage against the Pearsons’ residence. The bankruptcy court set aside the agreement as a preference on May 24, 1983.
 

 On May 23, 1983, the Pearsons amended their Chapter 13 statement listing Comprehensive as an unsecured creditor with a claim of $127,450.12. The Pearsons amended the statement to comport with the proofs of claim filed by the creditors, but reserved the right to contest the validity and amount of any such claim. At the confirmation hearing on May 25, 1983, Comprehensive objected to the confirmation of the Pearsons’ Chapter 13 plan on the ground that the Pearsons did not meet the threshold eligibility standard set forth in section 109(e) of the Bankruptcy Code. Comprehensive contended that the Pear-sons had more than $100,000 of noncontin-gent, liquidated, unsecured debt as shown by the amended Chapter 13 statement. The bankruptcy court held that at the time of filing the bankruptcy petition the unsecured debt was less than $100,000 and the subsequent amended statement did not cause the Pearsons to then become ineligible. The district court affirmed holding that the Pearsons met the eligibility standard at the time the bankruptcy petition was filed, and that events subsequent to the filing of the petition cannot disqualify the Pearsons.
 

 ISSUE
 

 The issue in this case is whether the Pearsons met the Chapter 13 eligibility requirement of section 109(e) which provides:
 

 (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual’s spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontin-gent, liquidated, unsecured debts that aggregate less than $100,000 and non-contingent, liquidated, secured debts of
 
 *753
 
 less than $350,000 may be a debtor under chapter 13 of this title.
 

 11 U.S.C. § 109(e). Comprehensive claims that the Pearsons had more than $100,000 of noncontingent, liquidated unsecured debts because the Pearsons’ amended statement listed Comprehensive as an unsecured creditor with a claim of $127,450.12. The Pearsons contend that Comprehensive’s claim was not liquidated on the date of filing because at that time there was a substantial dispute regarding liability and whether the claim was secured or unsecured. Whether the Pearsons had on the date of filing their petition noncontingent, liquidated, unsecured debts in excess of $100,000 is a difficult issue because the Bankruptcy Code defines neither “contingent” nor “liquidated.”
 

 STATUTORY BACKGROUND
 

 The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop a repayment plan under which creditors would be paid over an extended period rather than having the individual liquidate his assets under a straight Chapter 7 bankruptcy. Congress was especially concerned with individuals who are able to keep up with their obligations in normal times, but did not prepare for emergencies or unexpected events such as a serious illness in the family or a breadwinner being laid off from his or her job. H.R.Rep. No. 595, 95th Cong., 1st Sess. 116 (1977),
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6077. Chapter 13 allows the debtor to retain his property and avoid the stigma of a straight bankruptcy. The benefit to creditors is that their losses will be significantly less than if their debtors opt for straight bankruptcy. H.R.Rep. No. 595 at 118,
 
 reprinted in 1978 US. Code Cong. & Ad.News at 6079.
 

 Although consumer debtors would have rather paid creditors over an extended period of time, the “overly stringent and formalized Chapter XIII” of the old Bankruptcy Act discouraged overextended debtors from doing so. H.R.Rep. No. 595 at 117;
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News at 6077. The Bankruptcy Reform Act of 1978 altered Chapter XIII to make it more accessible, attractive, and easier for consumers to work out repayment plans. First, Congress eliminated the requirement that a plan be approved by a majority of creditors by conferring upon the bankruptcy judge the sole authority to confirm or reject any plan. 11 U.S.C. § 1325; H.R. Rep. No. 595 at 123-24;
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6084-85. Second, Congress provided additional incentives for a debtor to file under Chapter 13 rather than Chapter 7. Virtually all debts provided for in the Chapter 13 plan are discharged, but this is not so under Chapter 7. 11 U.S.C. §§ 523 and 1328; H.R. Rep. No. 595 at 118;
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6079. Third, Congress expanded the class of individuals who are eligible for Chapter 13 relief. Under the old Act, Chapter XIII was available only for wage earners. Under the new Code individuals with stable and regular income and individuals who operate businesses as sole proprietors became eligible.
 

 Although primarily designed for consumers who overburdened themselves with debt, the Bankruptcy Reform Act of 1978 extended Chapter 13 eligibility to small businessmen who are self-employed because “[t]he distinction between a barber, grocer, or worm digger who is self-employed from one who is an employee is slight. H.R. 8200 eliminates the distinction, in order to afford small sole proprietors as well as wage earners an alternative to Chapter 11.” H.R.Rep. No. 595 at 119;
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News at 6079. Generally, Chapter 13 is simpler, speedier, and less expensive than Chapter 11. Congress desired to give small sole proprietors the benefit of Chapter 13, but also established dollar limits to prevent larger businesses from taking advantage of the provisions. H.R.Rep. at 119;
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6079. The function of section 109(e) is to separate those small sole proprietors who should have the benefit of Chap
 
 *754
 
 ter 13 from those larger businesses who should not.
 

 I.
 

 Section 109(e) permits only those individuals who have on the date of filing their petition, noncontingent, liquidated, unsecured debts of less than $100,000 to be debtors under Chapter 13. Comprehensive contends that the Pearsons, on the date of filing their Chapter 13 petition, had more than $100,000 of noncontingent, liquidated, unsecured debt because the Pearsons later amended their Chapter 13 statement to list Comprehensive as an unsecured creditor with a claim of $127,450.12. The Pearsons contend that Comprehensive’s claim was not liquidated on the date of the filing of the petition because at that time there was a substantial dispute regarding liability and amount.
 
 [1]
 

 The term “liquidated” is not defined by the Bankruptcy Code. The bankruptcy courts have followed decisions under the old Bankruptcy Act which state that a claim is liquidated if its amount is readily ascertainable.
 

 The concept of liquidation has been variously expressed. The common thread throughout the cases, however, has been ready determination and precision in computation of. the amount due.... [A] liquidated debt [is] one that can be determined by mathematical computation. Some cases have stated the test as whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.
 

 In
 
 re
 
 King,
 
 9 Bankr. 376, 378 (Bankr.D.Or.1981) quoting
 
 In re Bay Point Corp.,
 
 1 B.C.D. 1635, 1639 (D.N.J.1975).
 
 See also In re Sylvester,
 
 19 Bankr. 671, 673 (Bankr. 9th Cir.1982).
 

 Although the bankruptcy courts agree that a claim is liquidated if its amount is readily ascertainable, the courts are in disagreement as to whether a debt is unliqui-dated when there is a substantial dispute regarding liability or amount. The bankruptcy court in
 
 In re Sylvester
 
 held that a dispute regarding liability or amount does not render a debt unliquidated, and that the disputed debt must be included in the section 109(e) eligibility computation. 19 Bankr. at 673. The Code states that “ ‘debt’ means liability on a claim.” 11 U.S.C. § 101(11). Since the definition of “claim”
 
 [2]
 
 uses the words “liquidated,” “contingent” and “disputed,” the court in
 
 Sylvester
 
 reasoned that the words had different meanings. Congress excluded only contingent and unliquidated debt from the computation; disputed unsecured debt was not excluded.
 
 [3]
 
 19 Bankr. at 673.
 

 The bankruptcy court in
 
 In re Lambert,
 
 43 Bankr. 913 (Bankr.D.Utah 1984), however, has held that a debt is not liquidated if there is a substantial dispute regarding liability or amount. A liquidated debt is one that is certain both as to amount and liability. Hence, a debt cannot be certain
 
 *755
 
 to the extent there is a bona fide dispute as to its amount or as to the underlying liability of the debtor to pay the debt. 43 Bankr. at 921. Thus, if there is a dispute as to the underlying liability of the debtor, then the entire debt is unliquidated, but only to the extent it is disputed.
 
 Id.
 

 The court in
 
 In re Lambert
 
 rejected the analysis in
 
 Sylvester.
 
 First, it reasoned, the absence of the terms “disputed” and “undisputed” from section 109(e) has no probative value since the terms “noncontin-gent,” “liquidated,” and “disputed” are labels for concepts that overlap and intertwine. 43 Bankr. at 920. Second, the court in
 
 Lambert
 
 asserted that in this context, “claim” has a broader meaning than “debt.” “Claim” refers to a creditor’s demand for payment regardless of the existence or validity of the underlying obligation; "debt” refers “not to the creditor’s claim, but either to (1) the actual obligation to pay as it exists in the contemplation of applicable law, or (2) to the obligation to pay as asserted by the debtor in the bankruptcy schedules.” 43 Bankr. at 918. The term “debt” was used instead of “claim” because “Congress did not wish the section 109(e) eligibility determination for Chapter 13 debtors to be predicated upon the mere demands of creditors.”
 
 Id.
 
 The legislative history, however, is imprecise. The House Report merely states that “[t]he terms are coextensive: a creditor has a ‘claim’ against the debtor; the debtor owes a ‘debt’ to the creditor.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6267. Finally, the court in
 
 Lambert
 
 felt that the provisions of section 109(e) should be liberally interpreted so as not to obstruct the eligibility of debtors desiring relief under Chapter 13 unnecessarily.
 
 [4]
 

 The Pearsons and Comprehensive also dispute whether the Pearsons’ debt should be considered secured or unsecured for purposes of the section 109(e) computation. Comprehensive claims the debt should be considered unsecured as listed in the Pear-sons' amended Chapter 13 statement. The original statement listed Comprehensive as having both a secured and unsecured debt, but stated the amount of each was unknown and in dispute. The Pearsons claim that the debt should be treated as secured since Comprehensive filed its proof of claim stating that its claim was secured by the accounts “transferred” by Pearson, Inc. to Timothy Pearson. There is very little case law on how to classify a claim for purposes of determining Chapter 13 eligibility when there is a dispute as to whether the claim is secured or unsecured.
 

 In
 
 In re Correa,
 
 15 Bankr. 195 (Bankr.D.Md.1981), the debtor filed Chapter 13 schedules listing total unsecured debts of $111,147.00; the bulk of which was a debt in the amount of $109,000.00 to the M.E.S. B.I.C., Inc. (MESBIC). MESBIC filed its proof of claim as a secured creditor, and the debtor filed an adversary proceeding against MESBIC to determine the validity of the lien. The court found that the dispute as to whether the creditor was secured did “not alter the fact that the Debt- or’s scheduled unsecured debt, at the time of the petition[,] included the debt to MES-BIC and exceeded the One Hundred Thousand Dollars ($100,000.00) limit.” 15 Bankr. at 197. The court in
 
 Correa
 
 relied on the debtor’s Chapter 13 schedule of debts to classify the debt as unsecured. In the instant case, however, the Pearsons listed the debt as both secured and unsecured and indicated the debt was in dispute.
 

 The bankruptcy courts disagree on the related issue of what portion of an underse-cured debt should be considered secured for purposes of section 109(e). The court in
 
 In re Ballard,
 
 4 Bankr. 271 (Bankr.E.D.Va.1980), would include as a secured debt only that amount of the debt which does not exceed the value of the collateral since section 506(a), 11 U.S.C. § 506(a), provides that a creditor’s allowed claim is a secured claim only to the extent of the value of such creditor’s interest in the property securing the debt. The amount of secured debt is to be determined by the debtor’s
 
 *756
 
 statements unless the creditor presents evidence to the contrary on the value of the security.
 
 Id.
 
 at 275.
 

 On the other hand, the court in
 
 In re Morton,
 
 43 Bankr. 215 (Bankr.E.D.N.Y.1984), held that the whole portion of the debt should be considered secured for the section 109(e) computation. “The focus of section 109(e) is of
 
 debts
 
 existing at the time of filing while the focus of section 506(a) is of
 
 claims
 
 existing and
 
 allowed
 
 well beyond the filing date.” 43 Bankr. at 220. Congress did not intend that a determination of Chapter 13 eligibility be delayed until the case has substantially progressed. Post-petition events should not be considered because they often occur “after the debtor and other parties in interest have expended relatively large amounts of time, money, and effort toward the debt- or’s reorganization.”
 
 Id.
 
 Hence, according to the court in
 
 Morton,
 
 the portion of a secured creditor’s claim, which is rendered unsecured pursuant to 11 U.S.C. § 506(a), is not to be considered unsecured debt of the debtor in a determination under 11 U.S.C. § 109(e).
 

 The bankruptcy courts are equally in dispute concerning the nature and scope of our judicial inquiry to determine Chapter 13 eligibility. Our view is that a hearing on the merits should be held to determine the liquidated amount of a disputed claim because a hearing insures accuracy in the section 109(e) computation. In
 
 In re Sylvester,
 
 the court held that once a debt is found to be noncontingent and liquidated, then a hearing on the merits of the claim should be held to “determine the liquidated amount of [the] disputed claim prior to making the computation required by section 109(e). Otherwise the federal court jurisdiction would depend on the accuracy and good faith of both creditors and debtors.” 19 Bankr. at 673. The court in
 
 In re Lambert,
 
 would also require a hearing on the merits unless the hearing would cause undue delay, in which case the court should rely upon the characterization of the disputed debt as set forth by the debtor in his schedules. 43 Bankr. at 925. If a hearing on the merits is held, it does not matter whether a court considers a disputed debt to be within the section 109(e) computation or not since the hearing will resolve the dispute.
 

 Another view is that a court should rely primarily upon the debtor’s schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing.
 
 See In re King,
 
 9 Bankr. 376 (Bankr.D.Or.1981). We adhere to this construction as more harmonious with congressional intent and with the statutory scheme. First, section 109(e) provides that the eligibility computation is based on the date of filing the petition; it states nothing about computing eligibility after a hearing on the merits of the claims. Second, the fact that evidence must be taken to determine the amount of the claim indicates that, until then, the claim was unliquidated. Third, the Bankruptcy Code contemplates that a Chapter 13 plan be adopted and implemented in a short period of time. Rule 3015 of the Bankruptcy Code provides that a plan “shall be filed within 15 days [after the, filing of the petition] and such time shall not be extended except for cause shown_” “Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.” 11 U.S.C. § 1326. Thus, within forty-five days of the Chapter 13 bankruptcy petition, the debtor should be making payments under the proposed plan.
 

 II.
 

 It would be possible of course to spell out detailed procedures by which the question of Chapter 13 eligibility may be resolved including what kinds of proof would be minimally sufficient and what burdens of proof must be met by one side or the other. We believe, however, that it would be inappropriate to do so. It is plain that section 109(e) indicates a congressional intent to limit those eligible for the benefits of Chapter 13 and uses language that is
 
 *757
 
 somewhat in the form of a jurisdictional requirement. It is also plain that the qualifications engrafted on “unsecured debts of less than $100,000” and on “secured debts of less than $350,000” indicate that absolute certainty is not and cannot be expected. This is particularly true where the determination to be made is that “on the date of filing of the petition.”
 

 This threshold eligibility determination for Chapter 13 is in many respects like the threshold subject matter jurisdiction determination in diversity cases where the $10,-000 minimum amount in controversy is challenged. Clearly in both situations Congress intended to limit the class of persons who might avail themselves of access to the federal forum. Just as clearly, it is necessary that the procedures for determining initial jurisdiction cannot be allowed to dominate the proceedings themselves nor to delay them unduly. As important as this may be in the ordinary diversity litigation in a district court, it is even more important with respect to Chapter 13 proceedings for time is of the essence. The resources of the debtor are almost by definition limited and the means of determining eligibility must be efficient and inexpensive. To allow an extensive inquiry in each case would do much toward defeating the very object of the statute.
 

 The Supreme Court faced the problem of how best to address the question of diversity jurisdiction where there was a challenge to the amount in controversy in
 
 St. Paul Indemnity Co. v. Red Cab Co.,
 
 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The Supreme Court recognized there that the exact amount in controversy could not always be ascertained, and held that the amount claimed in good faith by the plaintiff controls unless it appears to a legal certainty that the claim is for less than the jurisdictional amount or the amount claimed is merely colorable. As Justice Roberts observed:
 

 The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.
 

 Id.
 
 at 288-90, 58 S.Ct. at 590-91 (footnotes omitted). The amount in controversy is determined as of the time the action is commenced.
 
 Worthams v. Atlanta Life Ins. Co.,
 
 533 F.2d 994, 997 (6th Cir.1976). Subsequent events do not divest the court of jurisdiction.
 
 Id.
 
 Of course, when a party for the purpose of obtaining jurisdiction alleges excessive damages beyond any reasonable expectation of recovery, jurisdiction does not attach.
 
 Id. See
 
 Annot., 47 A.L.R.2d 651 (1956).
 

 We recognize that the diversity jurisdiction standard is not controlling here. The good sense of that approach, however, commends itself to our consideration for the same basic problems exist here and, it seems to us, the same basic approach is both workable and fair. Chapter 13 eligibility should normally be determined by the debtor’s schedules checking only to see if the schedules were made in good faith.
 

 
 *758
 
 Applied to this case, we need not concern ourselves with the limit on secured claims because it has not been and could not be claimed that any indebtedness, if secured, would have exceeded $350,000. Whether the Pearsons owed on the date of the filing of their petition unsecured debts in an amount in excess of $100,000 is con-cededly more difficult. At the same time, we believe it is wholly sufficient for the bankruptcy judge to have examined the petition and from that to have concluded that a good faith claim of eligibility was made. While the amount owed by the Pearsons to Comprehensive was probably established as $127,000 by the arbitration proceedings, it by no means indicates that the debt was unsecured to that extent or that the Pearsons would be ultimately held liable for that amount. The arbitrator’s award recognized the creditor’s security interest by ordering transfer of the accounts receivable and work papers upon the debtors’ failure in thirty days to satisfy the award. That a good faith claim of eligibility was made is fortified by the fact that Comprehensive filed its claim as a secured claim. Plainly, the Pearsons could in good faith have considered that their unsecured liability was at least in dispute and could reasonably have amounted to less than $100,000 should Comprehensive and the other creditors succeed in obtaining partial or full satisfaction of their claims from the property against which they claimed a security interest.
 

 In ruling upon Comprehensive’s challenge, the bankruptcy court observed: “I will hold ... that the time of filing governs, and not the subsequent amendment time of filing, and the debt was less than One Thousand Dollars [sic] [$100,000]. The Plan is confirmed and the objection is overruled.” Transcript of hearing at 19, No. 83-01414 (Bankr.E.D.Mich. May 25, 1983). In reviewing the record, United States District Judge Anna Diggs-Taylor held when the matter was appealed to the district court that
 

 It appears that the Bankruptcy Judge cannot be said to have made a definite error as a matter of law or is clearly erroneous. The Court is going to affirm his decision, not because of anything not being in writing nor is the Court going to disregard argument as to the form of briefs which were filed here, but in the few cases that have been cited to the Court here today, and by the Appellees, it appears that the amount owed is not governed by circumstances, changes or shifts in claims from a secured category to an unsecured category under Section 10 of Chapter 13.
 

 Accordingly, as much as the after filing of the petition, the petitioner could properly claim to liquidate less than $100,000.00. Therefore, the Bankruptcy Court’s determination must be affirmed.
 

 Transcript of oral argument at 17, No. 83-CV-2160-DT (E.D.Mich. September 26, 1983). We fully agree that the findings were not clearly erroneous. We therefore also agree with the bankruptcy judge, the district judge, and the rationale of the Supreme Court in the
 
 St. Paul Indemnity
 
 case that the fact that some later resolution of the conflict might render more certain the precise nature of the debt itself and the extent to which it is ultimately found to be secured is relatively immaterial in determining the debtors’ financial condition and Chapter 13 eligibility on the date the petition was filed. The bankruptcy judge and the district judge both looked realistically to the state of the debtors’ affairs as it reasonably appeared on the date of filing. We do not believe that the statute requires any more. Accordingly, the judgment of the district court is Affirmed.
 

 [1]
 

 . The Pearsons deny liability under the agreements alleging, among other things, fraud and unconscionability. The Pearsons also contend that there is a dispute as to the amount of the claim; however, an arbitrator, pursuant to mandatory and binding arbitration clauses of the parties’ agreements, rendered an award in favor of Comprehensive in the sum of $127,450.12. No claim is made that Comprehensive’s debt is contingent.
 

 [2]
 

 . A claim is defined as a
 

 (A) right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, unma-tured, disputed, undisputed, legal, equitable, secured, or unsecured; or
 

 (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;
 

 11 U.S.C. § 101(4).
 

 [3]
 

 . See also In re Blehm,
 
 33 Bankr. 678 (Bankr.D.Colo.1983) (disputed debts included in section 109(e) eligibility computation);
 
 In re DeBrunner,
 
 22 Bankr. 36 (Bankr.D.Neb.1982);
 
 In re Vaughn,
 
 36 Bankr. 935, 939 (D.C.N.D.Ala.),
 
 aff’d Vaughan v. Central Bank of South,
 
 741 F.2d 1383 (11th Cir.1984) (to allow debtors to exclude disputed claims from the section 109(e) calculation would encourage debtors to dispute claims in order to come within the eligibility limits).
 

 [4]
 

 .
 
 See also In re King,
 
 9 Bankr. 376 (Bankr.D.Or. 1981).