In re Charles Verlin HUTCHENS and Sidney Gail Hutchens, Gail Rakes Hutchens, Gail R. Hutchens Debtors.

Bankruptcy No. 3–86–02121.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 20, 1987.

See also, Bkrtcy., 69 B.R. 402.

Donald K. Vowell, Knoxville, Tenn., for debtors.

Marilyn L. Hudson, Asst. U.S. Atty., Knoxville, Tenn., for U.S.

Michael H. Fitzpatrick, Knoxville, Tenn., for Federal Sav. and Loan Ins. Corp. and Robert E. Craddock, Jr., trustee.

R. Louis Crossley, Jr., Knoxville, Tenn., for Twelve Oaks Co.

## MEMORANDUM ON DEBTORS' ELIGIBILITY FOR CHAPTER 13 RELIEF

RICHARD STAIR, Jr., Bankruptcy Judge.

The debtors, Charles Verlin Hutchens and Sidney Gail Hutchens, filed a joint voluntary petition under Chapter 13 of Title 11 of the United States Code on October 9, 1986. On November 18, 1986, the United States of America filed a "Motion To Dismiss Or Convert To A Proceeding Under Chapter 7." This motion is premised upon the liability of the debtors to the Internal Revenue Service (IRS) for past due income taxes in the alleged amount of $363,700.26, which is in excess of the statutory limits for filing Chapter 13. (11 U.S.C.A. § 109(e) (West 1979)). On December 22, 1986, the debtors filed a response entitled "Motions Regarding The Debtors' Qualifications To Proceed In Chapter 13 Together With Related Points And Authorities." This motion summarizes the debtors' legal position with respect to their eligibility for relief under Chapter 13 and requests the court to allow them to continue under that chapter or, in the event of a finding of ineligibility, that their joint case be severed or converted to Chapter 11.

In addition to the motion to convert or dismiss, three creditors, including the IRS, have filed objections to the debtors' Chap-

ter 13 Plan filed on October 24, 1986.[1] Further, an entity known as Twelve Oaks Company has filed a motion to vacate the automatic stay. Twelve Oaks seeks to gain possession of the debtors' residence at 9640 Briarwood Boulevard, Knoxville, Tennessee, which it claims to have purchased at a foreclosure sale on January 30, 1986. To further complicate matters, the debtors have filed adversary proceedings challenging the validity of the January 30, 1986, foreclosure sale, and seeking a determination under § 505(a) of title 11 of their tax liability to the IRS.[2]

I

Charles Verlin Hutchens is an accountant, working out of his home, earning approximately $500.00 per month. His work is performed primarily during the tax season between January and April and consists of preparing sales and income tax returns for his clients. He has previously owned and operated franchises for H & R Block, the tax consulting firm. He has a degree in accounting from the University of Tennessee.

Mrs. Hutchens has been employed by Galbraith Laboratories, Inc., for twenty-eight years and is presently an executive vice-president. During 1985 she earned approximately $132,000.00, including dividends on her Galbraith Laboratories, Inc. common stock.[3]

The debtors have two teenage children dependent upon them for support; they also support Mr. Hutchens' elderly mother. The net monthly income available to the debtors is $4,839.00. This includes Mr. Hutchens' estimated income of $500.00; Social Security benefits in the amount of $400.00 received by Mr. Hutchens' mother; and Mrs. Hutchens' salary of $8,749.00 less FICA and withholding taxes of $2,491.67, insurance premiums of $43.33, and payments on the debtors' delinquent tax liability to the IRS in the amount of $2,275.00.[4] The debtors itemized their monthly expenses at $4,335.00, thus leaving available the sum of $504.00 for payment under their Chapter 13 Plan.[5]

The IRS filed a claim against the debtors for non-payment of income taxes for the years 1978 through 1983. The IRS, through its assessment procedures, determined the debtors' total income tax liability is $142,749.23.[6] Penalties and interest to the petition date totaling $220,951.03 are also claimed for a total liability of $363,-

---

1. The debtors filed an "Amended Plan" on December 15, 1986. No hearing on confirmation has been scheduled pending resolution of the Chapter 13 eligibility question.

2. The motion on the eligibility issue raised by the United States and a final hearing on the automatic stay motion filed by Twelve Oaks were heard contemporaneously on December 22, 1986. A separate memorandum and order will be entered with respect to the Twelve Oaks motion. The two adversaries are *Hutchens v. Federal Savings and Loan Ins. Corp.*, Adv.Proc. No. 3–86–0199, (Bankr.E.D.Tenn., filed October 24, 1986) and *Hutchens v. Internal Revenue Service*, Adv.Proc. No. 3–86–0232 (Bankr.E.D.Tenn., filed December 8, 1986). (By an order entered on December 23, 1986, the United States of America and the IRS were added as parties defendant to Adv.Proc. No. 3–86–0199.)

3. Mrs. Hutchens testified that her Chapter 13 Statement, filed on October 24, 1986, accurately states her income. This statement reflects a bi-weekly gross income of $4,038.00, which computes to $104,988.00 annually or $8,749.00 monthly.

4. All of the deductions from Mrs. Hutchens' salary are computed from the debtors' Chapter 13 Statement by converting the debtors' figures which are scheduled as bi-weekly to monthly.

5. The debtors' Amended Plan filed on December 15, 1986, calls for payment of $500.00 per month to the Chapter 13 trustee with payments on the IRS indebtedness, which are being made in an agreed amount pursuant to a levy, to continue being made directly by the debtors at the rate of $1,050.00 bi-weekly ($2,275.00 monthly). Alternatively, if the IRS levy is released, these payments would be made by the trustee through the Plan.

6. The IRS claim reflects assessments of the debtors' tax liability as follows:

| Tax Year | Assessment Date | Amount |
|---|---|---|
| 1979 | July 30, 1984 | $24,910.56 |
| 1980 | December 9, 1985 | 36,769.76 |
| 1981 | December 9, 1985 | 34,964.54 |
| 1982 | December 9, 1985 | 18,962.37 |
| 1983 | November 18, 1985 | 27,142.00 |

700.26. Notices of tax liens were filed in the office of the Knox County Register of Deeds on November 29, 1984, and April 11, 1985. The IRS filed its claim as a secured creditor.

The debtors scheduled an unsecured priority claim in favor of the IRS in the amount of $366,327.00. This debt is categorized as "Disputed." The debtors also scheduled the IRS as a secured creditor with a claim in the amount of $366,327.00. The nature of this claim is categorized as "uncertain." The IRS is further scheduled as an unsecured creditor with a claim again being scheduled in the amount of $366,-327.00. This claim is also categorized as "uncertain." The debtors have thus scheduled the IRS as holding a priority claim and a claim classified as both secured and unsecured. Additionally, the debtors scheduled the Federal Savings and Loan Insurance Corporation (FSLIC) as a secured creditor holding a claim in the approximate amount of $51,000.00 and other unsecured creditors with claims totaling $42,095.00.[7] Their schedules, including their debt to IRS listed as both secured and unsecured, reflect total secured debts of $417,327.00 and total unsecured debts of $408,422.00.

Jeff Lawhorn, a certified public accountant, testified on behalf of the debtors. Mr. Lawhorn testified he had never met the debtors prior to the December 22, 1986, hearing, but that on December 18, 1986, the debtors' attorney presented him with copies of purported tax returns from the debtors for 1978 through 1983 and requested that he analyze these returns. He was not told whether the debtors had filed these returns. Mr. Lawhorn testified as to his familiarity with IRS tax assessment procedures and that once a tax is assessed by the IRS the taxpayer's liability is fixed and the IRS is free to collect on the liability. He further testified that subsequent to assessment a tax liability might be reduced

by agreement of the IRS and the taxpayer or readjusted upon a determination by the IRS that returns had in fact been filed. Mr. Lawhorn testified that his conclusions after analyzing the six returns submitted by the debtors' attorney are that: (1) the IRS appears to have based its assessments exclusively upon consideration of Mrs. Hutchens' income, which was taxed at the rate of an individual; (2) assuming the accuracy of the six returns he reviewed, the debtors' liability for the six-year period from 1978 through 1983, exclusive of penalties and interest, is $50,144.00; (3) the debtors owe an estimated $50,664.00 in penalties and interest based upon the same ratio used by the IRS in its computation of penalties and interest on its claim; (4) $16,-840.26 in interest included on the IRS claim for the year 1978 is not factored into his computations; and (5) based upon the copies of the returns provided to him, the debtors' liability to the IRS inclusive of penalties and interest approximates $100,-808.00.

Mrs. Hutchens testified that her husband prepared their income tax returns. She was told by an IRS agent that returns had not been filed but does not recall when this conversation took place. She recalls receiving notices of deficiency but does not recall the dates. She testified that to the best of her knowledge her husband mailed the original returns for the years in question.

Mr. Hutchens testified that he prepared and filed all returns for the years in dispute as follows:

| Tax Return Year | Date of Mailing |
| --- | --- |
| 1978 | June 10, 1979 |
| 1979 | June 15, 1980 |
| 1980 | May 19, 1981 |
| 1981 | June 14, 1982 |
| 1982 | April 3, 1983 |
| 1983 | June 2, 1984 |

Mr. Hutchens further testified that copies of these returns were used by Mr. Law-

7. The $51,000.00 secured claim of the FSLIC relates to the debtors' residence, which was sold at foreclosure on January 30, 1986. By an amendment filed on December 22, 1986, the debtors reclassified $30,000.00 of their unsecured debt, representing an obligation to one

Harry Galbraith, by amending paragraph 12(b) —"Secured Debts"—to reflect an obligation to Mr. Galbraith in the amount of $35,000.00, which is stated to be fully secured by Mrs. Hutchens' stock in Galbraith Laboratories, Inc.

horn in arriving at his analysis of the debtors' tax liability. Mr. Hutchens acknowledges that his wife's wages were levied upon by the IRS in late 1984 and that in March, 1985, the IRS agreed to accept $2,100.00 per month from her wages in payment on the debtors' liability. He testified he is familiar with the procedures utilized by the IRS as a prerequisite to an assessment of taxes and that a taxpayer is required to appeal to the United States Tax Court within ninety (90) days of a notice of a deficiency. He denies he had any knowledge of an alleged tax liability prior to the IRS levy on Mrs. Hutchens' wages. Mr. Hutchens acknowledges that he is aware there can be no lien filed by the IRS nor a levy on a taxpayer's assets until taxes are assessed. Neither he nor his wife have appealed the amount of liability assessed by the IRS or taken any other action prior to bankruptcy to obtain a determination of the liability which they now dispute.[8]

## II

Eligibility for Chapter 13 relief is governed by Bankruptcy Code § 109(e), which provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

11 U.S.C.A. § 109(e) (West 1979).

The question for determination by this court is whether the scheduled debt to the IRS is liquidated and noncontingent, thus disqualifying the debtors from relief under Chapter 13. Disputed debts are not excluded when calculating eligibility for Chapter 13 relief unless they are also contingent or unliquidated. *Vaughan v. Central Bank of the South,* 36 B.R. 935, 938–39 (N.D.Ala. 1984), *aff'd mem.,* 741 F.2d 1383 (11th Cir. 1984). Presumably, if the IRS claim is contingent or unliquidated, the debtors are eligible for relief under Chapter 13. If so, whether the debtors' Plan, as amended, meets the confirmation requirements of § 1325 of title 11 remains to be determined.

"The eligibility criteria set forth in respect to this provision [§ 109(e)] are specific and restrictive, with monetary amounts established to govern eligibility so as to insure that those persons for whose benefit the chapter is directed are those who employ its provisions. Thus, the fundamental purpose of section 109(e) is to establish the dollar limitations on the amount of indebtedness that an individual with regular income can incur and yet file under chapter 13.²" 2 *Collier On Bankruptcy,* ¶ 109.05 (15th ed. 1986). (Footnote 2 cites S.Rep. No. 989, 95th Cong., 2d Sess. 31 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5817).

The Sixth Circuit in *Comprehensive Accounting Corporation v. Pearson (In re Pearson),* 773 F.2d 751 (6th Cir.1985), discusses § 109(e) eligibility and the conflicts in authority concerning the nature and scope of judicial inquiry essential to a determination of Chapter 13 eligibility. While concluding it would be inappropriate to spell out detailed procedures by which questions of Chapter 13 eligibility may be resolved, *In re Pearson* nonetheless suggests the following procedures in determining such eligibility:

> Another view is that a court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith on the theory

---

8. 26 U.S.C.A. § 6213(c) (West 1980) provides: *Failure to file petition.*—If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a) [90 days, or 150 days if the notice is addressed to a person outside the United States, after notice of deficiency], the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary.

that section 109(e) considers debts as they exist at the time of filing, not after a hearing. *See In re King,* 9 Bankr. 376 (Bankr.D.Or.1981). We adhere to this construction as more harmonious with congressional intent and with the statutory scheme. First, section 109(e) provides that the eligibility computation is based on the date of filing the petition; it states nothing about computing eligibility after a hearing on the merits of the claims. Second, the fact that evidence must be taken to determine the amount of the claim indicates that, until then, the claim was unliquidated. Third, the Bankruptcy Code contemplates that a Chapter 13 plan be adopted and implemented in a short period of time. Rule 3015 of the Bankruptcy Code provides that a plan "shall be filed within 15 days [after the filing of the petition] and such time shall not be extended except for cause shown...." "Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed." 11 U.S.C. § 1326. Thus, within forty-five days of the Chapter 13 bankruptcy petition, the debtor should be making payments under the proposed plan.

.... It is plain that section 109(e) indicates a congressional intent to limit those eligible for the benefits of Chapter 13 and uses language that is somewhat in the form of a jurisdictional requirement. It is also plain that the qualifications engrafted on "unsecured debts of less than $100,000" and on "secured debts of less than $350,000" indicate that absolute certainty is not and cannot be expected. This is particularly true where the determination to be made is that "on the date of filing of the petition."

This threshold eligibility determination for Chapter 13 is in many respects like the threshold subject matter jurisdiction determination in diversity cases where the $10,000 minimum amount in controversy is challenged. Clearly in both situations Congress intended to limit the class of persons who might avail themselves of access to the federal forum.

Just as clearly, *it is necessary that the procedures for determining initial jurisdiction cannot be allowed to dominate the proceedings themselves nor to delay them unduly. As important as this may be in the ordinary diversity litigation in a district court, it is even more important with respect to Chapter 13 proceedings for time is of the essence.* The resources of the debtor are almost by definition limited and the means of determining eligibility must be efficient and inexpensive. To allow an extensive inquiry in each case would do much toward defeating the very object of the statute.

....

We recognize that the diversity jurisdiction standard is not controlling here. The good sense of that approach, however, commends itself to our consideration for the same basic problems exist here and, it seems to us, the same basic approach is both workable and fair. *Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith.*

....

.... We therefore also agree with the bankruptcy judge, the district judge, and the rationale of the Supreme Court in the *St. Paul Indemnity* case that *the fact that some later resolution of the conflict might render more certain the precise nature of the debt itself and the extent to which it is ultimately found to be secured is relatively immaterial in determining the debtors' financial condition and Chapter 13 eligibility on the date the petition was filed.* The bankruptcy judge and the district judge both looked realistically to the state of the debtors' affairs as it reasonably appeared on the date of filing. We do not believe that the statute requires any more.

*Comprehensive Accounting Corporation v. Pearson,* 773 F.2d at 756–58 (emphasis added).

Applying the *In re Pearson* rationale, this court must determine the debtors' eligibility for Chapter 13 relief from an analysis of the debts scheduled on the date of filing. The debtors scheduled their indebtedness to the IRS both as secured and unsecured in an amount substantially the same as that asserted by the IRS. (The IRS claim is filed in the amount of $363,700.26 while the debtors scheduled this obligation at $366,327.00.) It is of no assistance to the court that the claim is categorized as "disputed" or "uncertain" as the debtors do not set forth that amount which they now assert is undisputed ($100,808.00). Rather it appears these terms may have been used by the debtors solely in an attempt to bring themselves within the § 109(e) debt limitations.

▆ It is clear the debtors' liability to the IRS was liquidated and noncontingent on October 9, 1986, the date they filed their Chapter 13 petition, notwithstanding the dispute which now exists.[9] The debtors' tax liability for the six years in question had been assessed by the IRS. This liability represents a fixed, legal obligation of the debtors. Further, the IRS levied on Mrs. Hutchens' salary in late 1984; in March, 1985, the debtors agreed with the IRS on an appropriate amount to be withheld and paid pursuant to that levy in satisfaction of their outstanding obligations. No issue was raised at that time concerning the IRS levy or the amount of its claim.

Only after filing their Chapter 13 petition have the debtors taken action seeking to have their income tax liability reviewed. As previously indicated, it would appear this was done solely to establish the IRS debt as unliquidated, thus making these debtors eligible for relief under Chapter 13.

The court does not deny the right of these debtors to now dispute the amount of the IRS claim under the provisions of 11 U.S.C.A. § 505(a) (West 1979 & Supp.1986). However, this right in no way diminishes the fact that the liability of the debtors to the IRS was liquidated and noncontingent on the petition date.

Finally, resolution of the issues raised by the debtors as to their tax liability will require "an extensive inquiry" which may take months to resolve. Considering the requisite discovery and trial preparation together with this court's trial calendar, it is unlikely this matter can be resolved at the trial level within the next four to six months. Further, regardless of the ultimate determination of the debtors' tax liability, the entire amount, whether finally determined to be secured or unsecured, must be paid in full through the debtors' Chapter 13 Plan.[10]

For the above reasons, the court concludes the debtors do not meet the eligibility requirements of Bankruptcy Code § 109(e) and are not entitled to relief under Chapter 13. Accordingly, this Chapter 13 case must be dismissed or converted to a case under a different chapter.[11]

---

9. A debt is not contingent or unliquidated merely because it is disputed. *Craig Corp. v. Albano,* 55 B.R. 363, 368 (N.D.Ill.1985), *aff'd mem.,* 767 F.2d 924 (7th Cir.1985).

10. 11 U.S.C.A. § 1322 (West 1979 & Supp.1986), entitled "Contents of the Plan," provides:

    (a) The plan shall—

    .    .    .    .    .

    (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

    . . . .

11. Denial of Chapter 13 relief does not preclude the debtors from bankruptcy relief. As previously noted, while the United States has moved to dismiss or convert the debtors' case to Chapter 7, the debtors have moved, conditioned upon a determination of ineligibility for Chapter 13 relief, to convert to Chapter 11. Both motions require appropriate notice and a hearing. 11 U.S.C.A. § 1307(c) and (d) (West 1979 & Supp. 1986). Notice of the United States' motion and the hearing thereon has previously been given to all creditors and parties in interest. An order dismissing or converting the debtors' case will be entered after notice of and a hearing on the debtors' motion to convert to Chapter 11 and a further hearing on the United States' motion to dismiss or convert to Chapter 7.