D.W. NELSON, Circuit Judge,
dissenting:
The BAP remanded this case to the Bankruptcy Court for factual findings on two central issues: whether a particular debt was secured or unsecured and whether the debt schedules were created in good faith. Contrary to the majority’s assertion, this case does not present “one of those rare instances where we may assert jurisdiction.”
This court’s pragmatic approach to jurisdiction allows us to hear a bankruptcy case that has been remanded for further factual findings on a central issue if that issue “is legal in nature and its resolution ... could dispose of the case or proceeding and obviate the need' for factfinding....” In re Bonner Mall P’ship, 2 F.3d 899, 904 (9th Cir.1993) (emphasis added). The cases in which this court has exercised jurisdiction over remands from the district court or BAP have involved unmistakably legal issues. Compare In re Lundell, 223 F.3d 1035, 1038-39 (9th Cir.2000) (asserting jurisdiction where the remand concerned whether the bankruptcy court wrongly allocated a burden of proof); Bonner Mall P’ship, 2 F.3d at 904 (jurisdiction where the remand involved whether the Bankruptcy Code eliminated the new value exception); In re Kelly, 841 F.2d 908, 911 (9th Cir.1988) (jurisdiction where the remand involved undisputed facts), with In re Stanton, 766 F.2d 1283, 1285 & n. 2, 1288 & n. 8 (9th Cir.1985) (no jurisdiction in appeal of a remand for factual findings on a counterclaim that the BAP deemed potentially meritorious); In re Martinez, 721 F.2d 262, 265 (9th Cir.1983) (no jurisdiction over an appeal of a remand for a determination of the form of tenancy in which the debtors held their residence).
By contrast, the remand in the present case involves intensely factual questions: (1) whether the debtors gave Mary Scovis a security interest to their car in exchange for a loan of $4,136 and (2) whether there was any evidence of bad faith conduct. The majority finds a basis for jurisdiction not because the subject of the remand is legal in nature, but rather because the first factual question “implicates an important legal question that would likely dispose of the case.” In the world of law, every factual issue implicates a legal question that could dispose of a case. For example, the BAP’s remand on the good faith issue implicates a legal question: Can a person so desperate as to seek protection under the bankruptcy laws ever act in good faith? We could decide that all debtors act in bad faith, giving us-by the majority’s logic-a basis for jurisdiction.
If the rule that the majority crafts to dispose of this case is not as obviously absurd as the above example, it is nevertheless impractical, contrary to the aims of the bankruptcy code, and ultimately un *986 supported by ease law. The majority finds the debtors ineligible for Chapter 13 relief by holding that courts should look only to the debtor’s originally filed schedules in determining eligibility, “checking only to see if the schedules were made in good faith.” The majority cites two cases in support of this rule: In re Slack, 187 F.3d 1070 (9th Cir.1999), and In re Pearson, 773 F.2d 751 (6th Cir.1985). In each case, the court refused to consider evidence that debt had increased after the filing of the original petition. In Slack, the court refused to consider in its Chapter 13 eligibility calculation a $455,480 civil judgment entered against the debtor in state court six months after he filed the bankruptcy petition. Slack, 187 F.3d at 1072. In Pearson, where the debtors originally made a good-faith listing of an arbitration award as partly secured and partly unsecured, the Sixth Circuit refused to consider an amendment filed by the debtor that reclassified the award as entirely unsecured. Pearson, 773 F.2d at 752. The Pearson court found it necessary to limit the scope of its eligibility calculation because “time is of the essence. The resources of the debtor are almost by definition limited and the means of determining eligibility must be efficient and inexpensive.” 773 F.2d at 757.
The Pearson court based its primary reliance upon the debtor’s schedules on the rules developed to determine whether a diversity plaintiff has pleaded the minimum amount of controversy to fall within the district court’s subject matter jurisdiction. See id. at 757. In formulating its rale, Pearson (quoted extensively from St. Paul Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-90, 58 S.Ct. 586, 82 L.Ed. 845 (1938)):
“The rule governing dismissal for want of jurisdiction in cases brought in federal court is that ... the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.”
Pearson, 773 F.2d at 757 (quoting St. Paul Indemnity, 303 U.S. at 288-90, 58 S.Ct. 586).
In the law of diversity jurisdiction, then, jurisdiction is not destroyed by subsequent events that reduce the amount recoverable below the statutory limit. Id. More important for this case, jurisdiction is not destroyed if the original complaint fails to plead the requisite amount in controversy, unless it appears “to a legal certainty that the claim is really for less than the jurisdictional amount.” Crum v. Circus-Circus Enters., 231 F.3d 1129, 1131-32 (9th Cir. 2000) (quotations omitted); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1213-14 (2d ed.1990). Where there is no such legal certainty, courts will generally accept amendments to the complaint correcting jurisdictional defects. See Fed.R.Civ.P. 15(a); 28 U.S.C. § 1653.
In Slack and Pearson, events subsequent to the filing of the petition threatened to make the debtors ineligible for bankruptcy protection. In the present case, the opposite is true. While the original complaint may reflect an amount of unsecured debt in excess of $250,000, the debtors filed-and the bankruptcy court accepted-an amended debt schedule that shows a reduction in general unsecured debt from $40,499.83 to $22,919.85, potentially making the debtors eligible for Chapter 13 protection. Deleting “three creditors who had been paid by insurance or other sources,” In re Scovis, 231 B.R. 336, *987 338 (9th Cir. BAP 1999), the amended sum was accepted by the bankruptcy court pursuant to Bankruptcy Rule 1009, which allows “as a matter of course” amendments to “[a] voluntary petition, list, schedule or statement.” The majority’s holding subverts the bankruptcy code’s liberal allowance of amendments and adopts a version of the Pearson rule that ignores its roots in the logic of diversity law.
While fatal to the debtors in this case, the majority’s holding may also harm creditors because it seems to preclude courts from including in an eligibility calculation certain debts that assuredly exist but were omitted without bad faith from the original debt schedules. Although Slack followed Pearson in its refusal to consider a state court judgment entered after the petition was filed, the Slack court nevertheless distinguished Pearson and allowed the bankruptcy court to include in its eligibility calculation debts existing at the time of filing that are “easily calculable.” Slack, 187 F.3d at 1074. The majority purports to follow Slack by determining that the full Henrichsen judgment was unsecured even though the petition listed the judgment as partially secured and partially unsecured. But the majority inexplicably fails to include the interest owed on the judgment. That interest was owed was obvious to all parties — the debtors admitted as much in their brief to this court — and the BAP easily calculated it to the penny. This calculation added a not insignificant $8,847.22 to the amount of unsecured debt. The majority undermines Slack by failing to explain why readily ascertainable interest should be excluded from the eligibility calculation.
Thus, the majority has devised a rule “implicated” by the subject of the BAP remand that will dispose of this case. In the process, the majority has contravened the liberal allowance of amendments at the core of Bankruptcy Rule 1009 and has sacrificed accuracy without any efficiency gains. It is only understandable that the appellee did not argue for anything remotely like the rule the majority crafts. He merely sought an affirmance of the BAP’s remand order, a position that indicated that this case was precisely one for which an exercise of jurisdiction was unwarranted. I respectfully dissent.