In re Kristopher Ryan PISCZEK and Jeris Danette Pisczek, Debtors.

No. 00–31486.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division–Flint.

May 22, 2001.

Mark Van Epps, Owosso, MI, for Debtors.

Samuel D. Sweet, Troy, MI, Chapter 7 Trustee.

Carl L. Bekofske, Flint, MI, Chapter 13 Trustee.

## OPINION REGARDING CHAPTER 7 TRUSTEE'S MOTION TO CONVERT

ARTHUR J. SPECTOR, Chief Judge.

### Introduction

Kristopher and Jeris Pisczek filed for chapter 7 bankruptcy relief on August 1,

2000. On November 6, 2000, the Debtors filed a "Notice of Conversion of Chapter 7 Case to Chapter 13 Case." (Docket # 27)

On November 14, 2000, the Court entered a "Notice of Conversion of Case from Chapter 7 to Chapter 13; and Order to Debtor to File Supplemental Matrix and Plan." (Docket # 30). This order, which bears a stamped signature of the undersigned judge, states: "NOTICE is hereby given that, pursuant to 11 U.S.C. section 706(a) . . . , the Chapter 7 case was converted to a case under Chapter 13 by the debtor's [sic] filing of a notice of conversion of November 6, 2000." Order. The order requires the Debtors to file "a plan" and submit "an interim payment order" within 15 days. The Debtors complied with this order. See Docket # 34 (Chapter 13 Plan) & Docket # 35 (Payment Order). A "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" was served on the matrix, see Docket # 33, as was a copy of the plan. See Docket # 39. On April 3, 2001, the plan was confirmed. See Docket # 83.

On December 4, 2000, the chapter 7 trustee (not the chapter 13 trustee) filed a "Motion to Reconvert Case from Chapter 13 to Chapter 7." One of the grounds for "reconversion," according to the trustee, was his contention that the Debtors are ineligible for chapter 13 because they have unsecured debt in excess of the prescribed limit under 11 U.S.C. § 109(e). See Motion at ¶¶ 5 & 6 (Docket # 36). The Debtors objected to the motion, challenging the trustee's standing to seek conversion. See Answer to Motion at p. 4 (Docket # 40).

The Debtors also asserted that they are in fact eligible for chapter 13, explaining that they intended to "amend schedule D, which contains [a] . . . $290,000 claim that might be made by one creditor, which [D]ebtors believe may in fact be now $0." Id. at p. 3. True to their word, the Debtors

amended schedule D on January 10, 2001. See Docket # 53. Originally, schedule D listed "Newcourt Financial" as holding a $290,000 claim, with most of it ($280,040) being unsecured. (The collateral, described as "business property and A/R," is said to be worth only $9,960). As amended, Schedule D now reports that Newcourt holds no claim at all (or, more precisely, that the amount of Newcourt's claim is "0"). Contrary to the original schedule, Newcourt's claim is now described as "contingent."

A hearing on the trustee's motion was held January 17th, 2001. Counsel for the Debtors requested and was granted an adjournment, as bad weather had prevented his clients from appearing at the hearing. In the meantime, the Court reserved decision on the issue of standing.

### Discussion

■ The Debtors' contention that the trustee lacks standing is premised on the seemingly sound assumption that this case was in fact converted to chapter 13. A review of the facts, however, leads the Court to reject this assumption.

As indicated, the Debtors filed something entitled "Notice of Conversion of Chapter 7 Case to Chapter 13 Case." While this pleading is styled as a notice, the Debtors ask that the "Court convert their chapter 7 case to a case under chapter 13." Notice of Conversion. Thus the Debtors' "notice" was actually a motion: They were asking that the Court convert the case.

That the Debtors were "asking" rather than "telling" is consistent with the Code. Conversion pursuant to § 706(a)—which states that "[t]he debtor may convert a [chapter 7] case . . . to . . . chapter . . . 13," 11 U.S.C. § 706(a)—can only be by court order. See 11 U.S.C. § 706(c) ("The

court may not convert a [chapter 7] case ... to ... chapter ... 13 ... unless the debtor requests such conversion."); 11 U.S.C. § 706(d) ("[A] case may not be converted to case under another chapter ... unless the debtor may be a debtor under such chapter."); *compare* F.R.Bankr.P. 1017(f)(2) ("Conversion ... under ... § 706(a) ... shall be on motion ....") *with* F.R.Bankr.P. 1017(f)(3) ("A chapter 12 or chapter 13 case shall be converted without court order when the debtor files a notice of conversion ....."). To effect a conversion, then, the Court had to grant the Debtors' motion to convert.

In this case, however, the Court never ruled on the motion. The Court's "Notice of Conversion" simply (and erroneously) advises parties in interest that conversion was brought about by virtue of the Debtors' notice. Since the Court has yet to rule on the conversion motion, this case remains a chapter 7 case. *See In re Calder,* 973 F.2d 862, 867 (10th Cir.1992) ("[A] conversion from Chapter 7 to Chapter 13 pursuant to § 706(a) becomes effective only upon the entry of a conversion order by the court."). Accordingly, the Court rejects the Debtors' contention that the (Chapter 7) trustee lacks standing to challenge their eligibility for chapter 13.

■ Turning to the merits of this challenge, eligibility for chapter 13 is to be measured as of "the date of the filing of the petition." 11 U.S.C. § 109(e). *See also, e.g., In re Pearson,* 773 F.2d 751, 758 (6th Cir.1985) (Section 109(e) requires a determination as to "[w]hether the Pearsons owed on the date of the filing of their petition unsecured debts in an amount in excess of $100,000."). If, as in this case, the debtor seeks to convert from chapter 7 to chapter 13, the relevant date remains the date that the debtor filed for chapter 7 relief. *See* 11 U.S.C. § 348(a) (With exceptions not relevant here, "[c]onversion of

a case from ... one chapter ... to ... another chapter ... does not effect a change in the date of the filing of the petition."); *In re Bush,* 120 B.R. 403, 405–06 (Bankr.E.D.Tex.1990).

■ Section 109(e) "requires [no] ... more" than a "realistic[ ]" assessment of the debtor's "state of ... affairs as it reasonably appeared on the date of filing." *Pearson,* 773 F.2d at 758. In this case, then, the issue is whether there was a reasonable basis for scheduling the debt owed to Newcourt as non-existent (since it represents a claim of zero dollars) or contingent. *See* 11 U.S.C. § 109(e) (The debt limit applies to "noncontingent" debts.); *see Pearson,* 773 F.2d at 758 (indicating that a debtor's "claim of eligibility" for chapter 13, as evidenced by the petition and schedules, must be made "in good faith.") *see also In re Mannor,* 175 B.R. 639, 641 (Bankr.E.D.Mich.1994) (A debtor's subjective belief as to the amount of a debt is irrelevant if it was "clear—legally certain" on the petition date that the belief was unfounded.).

■ The Court at this point has only sparse information relating to this issue. The amended schedule D explains that the Debtors were "advised that [Newcourt] ... has been enjoined from collecting [its debt] ... by [a] Florida Court." It further states that the Debtors do "not know [the] particulars of th[is] alleged injunction." At the hearing, counsel for the Debtors also represented that his clients had been advised by a private investigator that Newcourt had decided that it would not attempt to collect the debt owed.

If the injunction and Newcourt's alleged decision not to pursue its rights represent post-petition developments, then *Pearson* strongly suggests that they are to be disregarded. *See Pearson,* 773 F.2d at 758 (dismissing as "relatively immaterial" post-

petition developments "that might render more certain the precise nature of the debt itself and the extent to which it is ultimately found to be secured"). The present record does not permit the Court to make a finding on this point.[1] Nor has the Court had the opportunity to assess the credibility of the Debtors regarding their professed belief that Newcourt's debt was contingent and/or extinguished. Accordingly, a hearing will be scheduled at which time the Debtors will have the opportunity to establish a fuller record regarding the foregoing issues.

For these reasons, an order will enter which (i) deems the Debtors' Notice of Conversion to be a motion for conversion; (ii) deems the trustee's motion for reconversion to be an objection to the conversion motion; and (iii) sets a hearing date on the Debtors' motion, at which time the parties may present additional evidence and arguments in support of their respective positions.[2]

1. This assumes that these considerations could be relevant under *any* circumstances—an issue which we do not decide today. Counsel for the Debtors cited no authority for the (rather shaky) proposition that a debt owed to a litigation-shy creditor is not a debt for § 109(e) purposes. And the significance of the mysterious injunction is hardly self-evident.

2. If the Debtors' motion to convert is ultimately granted, then it will of course be on a *nunc pro tunc* basis. But the mess that could be created if the motion is denied underscores the need—long expressed by this Court—for more care in the way that the pleadings in which the debtor purports to unilaterally convert his or her case from chapter 7 to chapter 13 are handled by the Court. Henceforth, any so-called "notice" of conversion from 7 to 13 will be treated as a motion for conversion. *See* F.R.Bank.P. 1017(f)(2).