**In re Marc David FUSON Nicole Elizabeth Fuson, Debtors.**

**No. 08–33149.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Oct. 24, 2008.

E. Hanlin Bavely, Cincinnati, OH, for Debtors.

Jeffrey M. Kellner, Dayton, OH, trustee.

Thomas R Noland, Dayton, OH, trustee.

## DECISION AND ORDER OF COURT DISMISSING CASE FOR FAILURE OF DEBTOR TO MEET 11 U.S.C. § 109(e) ELIGIBILITY REQIREMENTS UNLESS CASE IS CONVERTED WITHIN THIRTY (30) DAYS

LAWRENCE S. WALTER, Bankruptcy Judge.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This matter is before the Court on various pleadings,[1] but most salient to the court's decision are the motions to dismiss filed by the Chapter 13 Trustee ("Trustee") and Fifth Third Bank ("Creditor") [Docs. 25 and 26]; the memorandum in opposition filed by Debtors Marc and Nicole Fuson ("Debtors") [Doc. 39]; and the reply filed by Fifth Third Bank [Doc. 42].

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are not in dispute. Prior to the Debtors' bankruptcy filing, Debtor Marc Fuson was sole shareholder of an Ohio "S Corporation" titled Fuson Design Group, Inc. ("FDG"). To finance the business operation, FDG borrowed money from Creditor on two separate oc-

---

1. The Chapter 13 Trustee and Fifth Third Bank filed objections to confirmation of the Debtors' plan for reasons similar to those identified in the motions to dismiss. The court has reviewed the objections as well as the Debtors' response, but, because of the outcome of this decision, it need not reach a determination on confirmation.

casions. Both Debtors personally guaranteed the loans in question. As security, Debtors granted a third mortgage to Creditor on Debtors' principal residence. The loans were also secured by various business assets of FDG. Eventually, the business of FDG began to decline, and it ceased operations.

On June 27, 2008, the Debtors filed a voluntary petition for Chapter 13 relief. In their Schedule F, the Debtors listed $345,160.46 in aggregate noncontingent liquidated unsecured debt. However, in their memorandum in opposition and at the hearing, the Debtors clarified that one debt in the amount of $22,183.59 was scheduled twice because the debt is owed to more than one entity, but only one total amount of $22,183.59 is owed.[2] Consequently, the Debtors assert that the actual amount of unsecured debt in Schedule F for the purpose of calculating § 109(e) eligibility should be reduced to $322,976.87.[3]

The aggregate amount of unsecured debt listed by the Debtors in Schedule F, however, did not include the debts owed to Creditor on the Debtors' personal guaranty. The Debtors listed those debts in Schedule D as "secured" noncontingent and liquidated amounts. Significantly, the Debtors' Schedule D values the Creditor's claims as $93,699.34 and $39,902.92; however, the listed value of the property securing these claims is $0.00. At the hearing, the parties agreed that there is insufficient equity in the Debtors' house to support the third mortgage granted to Creditor and that, consequently, the Creditor's claims are not secured by any assets of the Debtors.

The Trustee and Creditor filed motions to dismiss the Chapter 13 case asserting that Debtors' unsecured debts exceed the Chapter 13 eligibility limit imposed by 11 U.S.C. § 109(e). On September 16, 2008, the court held a hearing to consider the parties' arguments and this is the decision of the court.

## LEGAL ANALYSIS

A debtor can file a Chapter 13 petition only if he is "an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900...." 11 U.S.C. § 109(e) (2008). In the Sixth Circuit, the seminal case interpreting § 109(e) and its debt limits is *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir.1985). *Pearson* clarifies that when making a determination of whether a debtor's unsecured debts exceeds the limit prescribed by the statute, a court should rely on the schedules of a debtor as of the date of the filing and should look beyond the schedules only if the court determines that they were not filed in good faith. *Id.* at 756. The purpose for relying on the debtors' schedules, if filed in good faith, is to promote a Chapter 13 proceeding for those who are eligible and to determine eligibility with a minimum of litigation, keeping the process efficient and inexpensive. *Id.*

---

**2.** Debtors state that either the landlord or co-obligor is owed the $22,183.59 of rent, not both.

**3.** In the memorandum in opposition, the Debtors argue that the amount of unsecured debt for § 109(e) calculations should further be reduced by the amount designated as "disputed" in Schedule F by the Debtors. However, the amount is minimal compared to the Debtors' overall debt and neither the exclusion or inclusion of the "disputed" debts impact the outcome of the calculation. Furthermore, contrary to the Debtors' argument, disputed debts that are otherwise liquidated and noncontingent are included in a § 109(e) eligibility calculation. *See* 11 U.S.C. § 109(e); *In re Tabor*, 232 B.R. 85, 89–90 (Bankr.N.D.Ohio 1999).

at 757 (noting that "[t]o allow an extensive inquiry in each case would do much toward defeating the very object of the statute").

■ In this case, the parties do not ask this court to look beyond the Debtors' schedules. Instead, the dispute between the parties involves how the Debtors' scheduled amounts are to be construed. The Debtors argue that once the repeated item in Schedule F is eliminated, the court should find determinative the amount of unsecured debt listed by the Debtors in Schedule F totaling $322,976.87. Because the amount is less than the unsecured debt limit in § 109(e), the Debtors claim to be eligible for Chapter 13 bankruptcy relief. The Trustee and Creditor do not strongly dispute that the repeated item should be eliminated; however, they argue that the Debtors' unsecured debt calculation must be increased to include the debts owed to Creditor. Although the $93,699.34 and $39,902.92 debts owed to Creditor are listed as "secured" in Schedule D, the Debtors admit in that same schedule that the property securing those debts has no value. The Trustee and Creditor assert that, based on the Debtors' own valuation, these debts are properly considered "unsecured" for § 109(e) eligibility purposes. When the debts owed to Creditor are added to the calculation, the Debtors are not eligible for Chapter 13 bankruptcy relief.

Should debts be included in the unsecured debt calculation for § 109(e) eligibility purposes when the Debtors list them in Schedule D, but admit in the same schedule that the value of the collateral is zero? Although the Sixth Circuit has not addressed the issue, many bankruptcy courts in this circuit, as well as a majority of courts across the nation, have done so indirectly by allowing undersecured debts to be apportioned into secured and unsecured amounts for the § 109(e) eligibility calculation based on a debtor's own valua-

tion in his petition and schedules. *See In re Mason*, 133 B.R. 877, 878–79 (Bankr. N.D.Ohio 1991) (noting that a majority of courts examine the value of collateral securing a debt when evaluating a debtor's eligibility); *In re McClaskie*, 92 B.R. 285 (Bankr.S.D.Ohio 1988). *But see In re Holland*, 293 B.R. 425, 428 (Bankr.N.D.Ohio 2002) (following the minority position espoused in *In re Morton*, 43 B.R. 215 (Bankr.E.D.N.Y.1984) and its conclusion that courts should not bifurcate undersecured debts for § 109(e) eligibility purposes).

Instructive on this issue is the *McClaskie* case. In *McClaskie*, a debtor in a § 109(e) dispute with a Chapter 13 trustee attempted to amend his schedules to move an IRS debt of approximately $65,000 from his schedule of unsecured to secured debts upon discovery of a tax lien against his residence; the move ostensibly decreased his unsecured debts to an amount within the eligibility limit. *McClaskie*, 92 B.R. at 286. However, it was clear from the schedules that the residence, valued at $68,000 in the schedules, had a first mortgage lien against it totaling $45,918 making the IRS's tax obligation undersecured. *Id.* The court, while noting *Pearson*'s requirement that schedules filed in good faith generally be taken at face value, determined that merely placing an obligation on a schedule of secured debts does not make it a fully secured obligation. *Id.* at 286–87. When the debtor's own schedules support that a debt is undersecured, the court concluded that it could not "close its eyes" and ignore the obvious bifurcation reflected in the schedules. *Id.* at 287. Because bifurcating the IRS obligation into its secured and unsecured components increased the debtor's unsecured debts beyond the amount permitted by § 109(e), the court concluded that the debtor was not eligible for Chapter 13 bankruptcy relief. *Id.*

Even a bankruptcy judge who followed the minority position with respect to undersecured debts by prohibiting bifurcation concluded that a debt should be treated as unsecured when the debtor admits that the value of the collateral is zero. *Compare In re Martz,* 293 B.R. 409 (Bankr.N.D.Ohio 2002) *and Holland,* 293 B.R. at 425. In *Martz,* a debtor listed a secured claim for $59,641.65. 293 B.R. at 410. The property securing the claim was stock issued by closely held corporations, with a listed value of $0.00 on the schedule. *Id.* The trustee moved the court to dismiss on the basis that the debtor's unsecured claims exceeded the limit set in § 109(e); the debtor objected. *Id.* at 411. The court determined that the $56,641.25 secured claim needed to be reclassified because the stated value of the property securing the debt was $0.00. *Id.* at 413. The court stated that "pursuant to the standard set forth ... in § 506(a), [the] claim should, for purposes of § 109(e), be reclassified as completely unsecured...." *Id.* Thus, the court granted the motion to dismiss. *Id.*

In the case at hand, Debtors listed two secured debts on their Schedule D. Similar to the debtor in *Martz,* Debtors listed the value of the property securing each of the debts as $0.00. *Martz* and *McClaskie* are persuasive. Since the Debtors' own valuation of the collateral is zero, the debts are unsecured and must be treated as such regardless of the schedule in which the Debtors list them.

█ Debtors further argue that even if the debts are unsecured with respect to their own property, the debts are secured by assets of FDG. However, because FDG is a corporation, it is a distinct legal entity from the Debtors and has separate assets. While there are cases to the contrary, the court agrees with *In re Brown* and the Idaho bankruptcy court's conclusion that, for § 109(e) eligibility purposes, an obligation is not "secured" to the extent it is secured by property of a third party in which the debtor has no interest. 250 B.R. 382, 386 (Bankr.D.Idaho 2000). *But see In re White,* 148 B.R. 283, 286 (Bankr. N.D.Ohio 1992) (holding that a debt secured by collateral owned by non-debtor third party could still be classified as "secured" by the debtor for § 109(e) purposes).

Although debts secured by property in which a debtor has no interest are nevertheless commonly regarded as "secured debts" outside of bankruptcy, the Bankruptcy Code dictates a narrower view. Section 506(a)(1) of the Code provides as follows:

> An allowed claim of a creditor secured by a lien on property *in which the estate has an interest* ... is a secured claim to the extent of the value of such creditor's interest *in the estate's interest in such property* ....

11 U.S.C. § 506(a)(1) (emphasis added). As the highlighted text indicates, a secured claim must necessarily pertain to property in which the estate has an interest and the estate in the instant case has no interest in property wholly owned by a separate corporation, FDG. One court, in reaching the opposite conclusion, emphasized that § 109(e) refers to secured "debt" whereas § 506(a)(1) refers to a secured "claim." *In re Belknap,* 174 B.R. 182, 183 (Bankr. W.D.N.Y.1994). However, § 101(12) defines "debt" as "liability on a claim," a definition that the U.S. Supreme Court found sufficient to reveal "Congress' intent that the meanings of 'debt' and 'claim' be coextensive." *Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). It is therefore reasonable to conclude that the language of § 506(a)(1) restricts "secured debts" referenced in § 109(e) to those secured by property in which the estate has an interest.

It must also be noted that even if this court were to come to the opposite conclusion, considering FDG's property as collateral for Creditor's "secured" debt, it would not alter the court's ultimate determination because the Debtors nevertheless listed the value of the collateral as $0.00 in their schedules. Under the *Pearson* analysis discussed above, the good faith valuation contained in the schedules would be accepted for purposes of the § 109(e) evaluation in lieu of postpetition valuation or liquidation of FDG's property.

The court therefore determines that the $93,699.34 and $39,902.92 amounts owed to Creditor must be reclassified as unsecured debts. The result of the reclassification is that Debtors' unsecured debt exceeds the § 109(e) limit of $336,900, and Debtors do not qualify for Chapter 13 relief.

Based on the foregoing, the court will grant the dismissal of the Debtors' case unless the Debtors convert the case within thirty (30) days from the entry of this decision and order.

**SO ORDERED.**